Mr. Hawkins. Good morning, Your Honor. May it please the Court. I'm Richard Hawkins of the Hawkins Law Firm. I'm here this morning on behalf of the appellant and the plaintiff below, Sade Garnett. We are here appealing the dismissal of her defamation claim against the defendant, Appellee Remedi SeniorCare, who was the defendant below. And we are here appealing the dismissal of the case on a Rule 12b-6 motion to dismiss. I want to thank the Court for granting oral argument. My client and her father are both here in the courtroom today. We are pleased to be here. I will tell you I confess that I find myself in the most unfortunate position of being the last person standing between you and the end of the day. But we are happy to be here nonetheless. I want to explain in terms of how we examine this case. It reminds me of what Senator Daniel Patrick Moynihan said many years ago, that every man is entitled to their own opinions, but not their own facts. And the Supreme Court has long echoed the notion that there is no constitutional value to false statements. And we think what happened here is the district court conflated that, actually reversed both of those sentiments, and created a situation where Remedi was entitled to its own facts by calling them opinion. And that's the central issue in this case, which is whether or not the statements at issue are fact or are opinion. We submit the district court made numerous errors below in terms of getting to its resolution. We believe the district court improperly applied the Rule 12b-6 standard of review. We believe the district court failed to properly appreciate what the average listener of these statements would believe them to be conveying. We believe the district court improperly called these statements conjecture and misapplied the law in that regard. And we believe the district court misapplied precedent from both this court and the United States Supreme Court. I'll begin with the beginning, which is the- We brought this case against the employer under a respondeat superior theory. And so these statements would be subject to a scope of employment defense. Yes, Your Honor. And I don't understand how this statement, as repulsive and vulgar and ignorant as it was, was within the scope of his employment. Because, you know, we've had this, we have our Blair precedent, and just recently sat in on a case, Delacrite or something, where we dealt with scope of employment issues. And I don't understand the Virginia law. It's just hornbook Virginia law that a statement, in order to be actionable in terms of the employer, would have to be, as they put it, performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest. Well, how did this further the employer's interest? The speaker in this case is a supervisor. The speaker spoke as a supervisor to other employees. The comments are not in themselves related to what exactly is his job duties, but the fact that it comes from him as a supervisor. And we allege this in the complaint. Whether it's a supervisor or not, this statement still has to hold an employer liable. The statement would have to be something that furthered the employer's interest in it. And again, we said in our earlier opinion in Blair, it's well established that the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose respondent superior liability on the employer. And it's a multi-factor test. But normally you do apply a theory of respondent superior if what was done, either whether it's an action or words, was on behalf of the employer or in furtherance of the employer's business interest. And I can't see how, because in the Blair case, the one who committed the wrongful act of sexual harassment of others, he was more than a supervisor. He was a project manager. And we still said it was not at all in furtherance. I mean, there have been not only the Virginia cases, but cases out of our circuit. It has to be something that was intended, either mistakenly or intentionally, to further the employer's interest. And this despicable, vulgar statement could not have been said to advance an interest of the employer. The employer, for all I know, would have been horrified. Well, the employer was not horrified. The employer maintained the working relationship between these two individuals after the fact. But how, let's focus in on the statement itself. Yes, sir. How did that help the employer's business? Or how is it in furtherance of the employer's business? Well, the supervisor is talking about a subordinate employee being out of the office on medical leave, essentially. And I think in that context, and we are not talking about people who are using sophisticated language in this regard, but you are talking about an absent employee and the basis for that employee's absence. That would further an employer's interest. And in that respect, we are at the motion-to-dismiss stage, Your Honor. And I think with that analysis provided, and as is evident from the allegations in the complaint, I think it gets to the next step. And, of course, the employer did not raise the arguments you are now making. The employer did not move to dismiss on that basis. We can affirm on any basis. Without a doubt, Your Honor. But the parties have obviously come to this court based on Judge Hudson's analysis of the statements at issue. And, of course, if this had been a concern for either Judge Hudson or the appellant or the appellee, we obviously would have prepared arguments to defend and prosecute those points. I take your point, Your Honor. You can certainly sue the person who made this statement. And we have. And we have dismissed him from this case so that we have federal jurisdiction. Well, whatever. That's fine. But you can certainly sue the individual. But the difficulty I have is that, you know, you have an employer. And in any business, there are all kinds of employees. Correct. And it's almost impossible to hold an employer liable for it. There's a lot of crudity that takes place in the workplace. We all know that. There's just a lot of vulgar stuff. But if you were to hold and bring an employer in on each one of these statements that was made out of ignorance or spite with some employee, you'd be using respondeat superior to really increase employer liability exponentially. And I have a problem with it from the standpoint of our precedent in Blair And also from the recent case, I'm trying to remember the name of it, but it's Delakite or something. It was just a few months ago where there was actually sexual activity that was going on. And that was found not to be within the employers, within the scope of employment. That's such a basic principle of Virginia law. Correct. And I think the kind of cases you're talking about involve almost prurient interests. And in that respect, they would be excluded. And they would be on their face excluded. But what we have here are allegations that a supervisor is talking about a reason for an employee. Was the supervisor of human resources or something? No, sir. He was her supervisor. He was her night supervisor. So how does this separate it from gossip? How is he furthering the company's business by gossiping falsely, ignorantly? But how is that furthering the company's business? I take it from your question that the assumption is that gossip can never further the interest. I don't think that's the issue. I ask you how this particular gossip is. Oh, I think this particular gossip. Those are awful statements. It is. But the question is, how does it become the employer's problem? How is he furthering? How is Mr. Try furthering the company's business by gossiping falsely about an employee's health condition? If he had been in human resources, it would be a HIPAA violation if he was using this kind of information. So how is that in the furtherance of the company's interest? Again, I go back to my point that he was her supervisor, commenting about the basis for her being absent from work. She was not there. She was obviously having a medical procedure done. And in that context, to fellow employees, to fellow other non-supervisory employees, he is telling them that she is not there. But the people in our precedents and in our Blair cases were even higher up the chain. They were project managers. I mean, Ivo, who I think was the subject of the claims in Blair, were higher up. Then there's the other point about Judge Hudson's rationale on the defamation point. I mean, I can't believe the statement would be believable at all. Well, that's essentially what he said. And I don't think that's... The more basic problem I have is that I think the implications are hard when you... There must be millions of crude, unacceptable statements made across the country every single day. And it's a shame. It's really, really too bad. But, you know, to rope the employer in is... Let me say this, Your Honor. That carries it a long way. It did, and we've carried it all the way here to the Fourth Circuit. But I will tell you, if that argument had been raised, as Your Honor is raising it here today, we would have had an opportunity to amend the complaint to address exactly those points. That has not happened. The only thing that we have done is amend the complaint in order to address the statements at issue because those were the challenge statements. And I say that because, Your Honor, even if you express the concerns that you have, I think the proper course of action is to analyze the issue that is addressed before the court and to send it back to allow the employer to raise that argument, if that's something the employer wishes to do, and to allow us a sufficient opportunity under the federal rules to provide our evidence. I can't sit here and tell you... But we can affirm on any basis. You certainly may. But I think procedurally, because we come to this case or come to this court on a Rule 12b6 motion, it's not unfettered discretion to affirm on such a basis. There has to be an opportunity for the party against whom a ruling is based to make an argument. And I submit that, especially when we're talking about something like furtherance of the employer's interest, we should be given an opportunity to provide a factual basis upon which the court can make an assessment. That hasn't happened. I have all of five seconds left. I would like to make a point on Judge Hudson's analysis. Your Honor, you said that you thought it was unbelievable on its face. We disagree. I would invite the court to look at the Milkovich decision from the Supreme Court. Judge Hudson's opinion is essentially Justice Brennan's dissent. And we submit that the Rehnquist opinion in that case carries the day precisely on the notion of conjecture and speculation and jumping to conclusions and that sort of thing. We ask the court to reverse Judge Hudson's decision and to grant relief to allow the case to proceed forward. Thank you. Thank you, sir. Ms. Marcus. Thank you, Your Honor. May it please the court, my name is Elena Marcus and I'm here on behalf of Remedy Senior Care. The question before the court, as it was before the district court, is whether this statement can reasonably be interpreted as stating actual facts about Ms. Garnett. The case law cited by the district court and by Remedy squarely supports the district court's conclusion that the statement as a whole cannot reasonably be interpreted as stating that Ms. Garnett actually had a sexually transmitted disease and therefore is not actionable. Let me ask you this. I understand that one of the issues we are to address is whether a statement can objectively be characterized as true or false. Can the statement that the appellant has a sexually transmitted disease, is that capable of being proven truthfully or falsely? Yes, Your Honor. That little piece of the statement certainly can be proven truthfully or falsely, whether it's true or false. Yes. That does not, I submit, finish the analysis. I'm sorry. Go ahead. There are two bases for this district court's dismissal. One is that the statement must be considered as a whole and you can't isolate one portion of the statement from the other. So we can't separate she got an STD from the rest of the sentence that follows, which is because that's the only reason a female has surgery on her vagina. Second, the case law is clear that even when a statement can be verified as true or false, it may still be protected if it can best be understood from the language and context to represent the personal view of the author or speaker who made it. And that principle, that principle that even when you have a statement that can be provably true or false and yet isn't actionable comes from all the cases we cited. Milkovich says it. Chapin v. Knight Rider, the Fourth Circuit case. Potomac Valve. Biospherics, again, another Fourth Circuit case. Notably, Chapin and Biospherics were both appeals from a 12B6 dismissal that was affirmed by the Fourth Circuit. The restatement of torts that this court has followed, restatement of torts section 566 and other. I mean, does Virginia libel law have an exception for a really stupid statement? I mean, is there such an exception? I was not able to find an exception for a stupid statement. Or an ill-informed statement because these libels are, in fact, being false, are ill-informed, correct? Absolutely. And I think the rubric we have is whether it can reasonably be interpreted as stating an actual fact. And that's where we come down to. It can't be because it's a stupid statement, I would submit, Your Honor. There's no way anyone could really interpret that. I understand your position. You know, we have, and I think the Virginia Supreme Court has, an awful lot of law out there on the scope of employment. And we have the Blair decision, which involved, I think, worse facts than this. But we said, no, there's no respondee liability. And just this October, we heard the LaCoste, the name of it is LaCoste versus Diddley case. And that dealt with the scope of employment defense under Virginia law. And we were dealing with a man named Roy Evo. And as far as his position was, it was certainly farther up the chain of command than this individual defendant was here. He was the manager of the whole project. And he misbehaved and engaged in sexually assaulted behavior. And we said, you know, we don't condone that in any way, shape, or form. But the question is, was it further the employer's business interest in any kind of tangible way? And the, you know, Virginia Supreme Court has said it's whether the service of the tortious act was done, was within the ordinary course of the employer's business. And the precedent in Blair says the fact that an employee is at a particular location, at a particular specific time, as a result of his employment, is not sufficient to impose respondee superior liability on the supervisor. Now, these are both supervisory on the employer, I mean. And these are both precedents of this court. And they involve facts which were much more damning. And the whole reason Virginia law has a scope of employment defense is that without it, any statement or any misbehavior would lead to respondee superior, even if it had nothing to do with the employer's business interest. And that just blasts open liability almost without limit. And Virginia's tried to keep a rein on this. I've read a number of these cases. And they've tried to keep a rein on it. If we're wrong, they can change it. But I can tell you, I don't think they will. Well, Your Honor, I appreciate the analysis. I mean, I agree with you completely that there's nothing about this statement that furthers the employer's business. It was not the focus, as my colleague said, of the district court or the parties below, and partly because it is on a motion to dismiss the 12B6 motion. It was alleged in the complaint that he was acting within the scope and imperatives of the scope. Correct. And I anticipated, had that motion been denied, you would have promptly requested limited discovery on that issue and then moved for summary judgment. It's certainly an issue that we will take up on summary judgment should this case go back. There's a lot of issues, Your Honor, that we'll take up. But had Judge Hudson not done that, it would have been the first thing you would have done. Absolutely, Your Honor. So I'd like to address a couple of other points, unless the court has some further thoughts on that. I think the context is a focus of their brief, and I'd just like to address that briefly. The whole point of the third amendment, the second amended complaint here, was to add context, and I submit to you that the context that was added does not make these statements any more likely to state actual facts. Just saying that he was a supervisor certainly doesn't equate him to a human resources director, or they don't allege any significance to that title. They don't tell us that by supervisor he had access to her medical records. In fact, they tell us that she didn't tell him what the medical procedure was, and they also allege that they worked on two machines side by side. So I'd submit that being a supervisor doesn't tell you anything about this statement or their claim that he must be privy to private medical knowledge  The suit is going forward against the individual, is it not? It is not, Your Honor. Why not? Because they failed to serve the individual. In this case, they filed the suit about a day short of one year after the statement. There's a one-year statute of limitations for a defamation claim. They didn't serve the lawsuit until a year later, just as the Virginia law would have made the complaint. I forget the term, but it would no longer have been active, valid, dormant. Thank you, Your Honor. And they never served the individual. Because they never served the individual, as my colleague said, we had diversity of jurisdiction and we removed the case to this court. To get back, I find it frightening that, for example, General Motors can be sued for any kind of statement that a supervisor would make at any one of a number of branches and plants or branch offices or whatever across the country. I mean, the consequences of holding that kind of thing actionable are simply staggering.  Your Honor, that's why we are fighting this case as much as we are, because that's exactly right. Statements are made every day by coworkers, and that's really what these people were, coworkers. And if the employer is responsible for every such statement, we'll be here all the time, I'm afraid. I mean, because you just take General Motors as an example. There must be thousands of objectionable statements that some of its employees and supervisors are making. I wish human nature were better than it was. I wish it weren't so. But it is. There's no way that a company can keep track of it all. They can have a thousand training sessions, this and that. You won't eliminate all of it, regrettably. Because it's something, this statement is something everybody deplores. But you can't, you just can't eliminate it. No matter how hard you try, you can't monitor it all, no matter how hard you try. And there are statements made, and they're misinterpreted, and people get angry about a statement is made, and a lawsuit is put in in retribution, and everything just goes on and on and on. There'd be no end to it. I agree, Your Honor. I mean, that is a significant problem. A moment on the 12B6 standard, because my colleague mentioned it when he was up here. They cite a number of cases pre-Iqbal and Twombly under the old Conley versus Gibson standard. We know now under Twombly and Iqbal that to survive a motion to dismiss, the complaint must plead factual content that will allow the court to draw the reasonable inferences that they would like it to draw. The court does not have to accept as true legal conclusions, couched in factual allegations. And I think that's relevant in this case on the arguments they've made in the briefing. So I wanted to mention that. We've already mentioned that the court can affirm on any ground. We made some alternative arguments below. And I believe that the court can certainly affirm on the basis that she has not pled defamation per se, as we argued in the briefing, and that she hasn't alleged any harm to her reputation. Again, it goes to the 12B6 standard, but all they allege in there is harm to reputation, among other possible harms, including emotional distress, loss of sleep, loss of income, and things like that. Lastly, while I'm up, I'd like to address an issue that was addressed in the briefing, the notion of the exception on your question when a statement is made, an opinion is given based on facts that are disclosed, that that principle doesn't apply when the facts are false facts. And for that principle, counsel cites cases from the Southern District of New York under New York law. I submit to you- It used to be in this whole general proposition, which Judge Hudson alluded to, that something can't be defamatory if it's not believable at all. And there used to be, way back in the common law, a loathsome disease exception to that. Loathsome disease. You mentioned the loathsome disease, that that was defamatory per se. But Virginia never adopted that old common law chestnut. And, you know, a lot of things we used to regard as loathsome disease, hopefully we've taken a more enlightened outlook toward them. And you say that somebody has come down with a disease or whatever, it doesn't necessarily defamatory. Or somebody has a disability, that's not defamatory. It's just a statement which would- But Virginia has never- It was interesting to follow- My old torch teacher taught about the loathsome disease exception to the general rule that an unbelievable statement cannot be defamatory. But he was careful to say Virginia hasn't come anywhere near that. That's right, Your Honor. Some states have adopted a loathsome disease as a category of per se defamation. Virginia has not. The Virginia standard is a contagious disease that, if true, would exclude the party from society. And we made the argument, and I firmly believe, that having a disease, whatever disease it is, regardless of whether it's sexually transmitted or otherwise, does not exclude an individual from society. And we, in fact, cited statistics from the CDC, which says about half the adult population in the U.S. has a sexually transmitted disease. Well, hopefully we've achieved a more compassionate understanding of these situations. Agreed, Your Honor. And very briefly on the false facts, we cited the cases and the support for our position that the whole false facts notion is not an exception. But I wanted to add that as I was reviewing the case law, there's more support for our argument that the fact has to be both false and defamatory for this full statement to be actionable. And that's the Shachar v. Bufalt case that was cited in the briefing. So unless the court has further questions, I'll rest on the briefing. Mr. Hawkins, I would be pleased to hear from you. Thank you, Your Honors. I do have a few points that I'd like to raise in terms of both the scope of employment issue and the notion that these statements are not defamatory on their face.  First, I direct the court to joint appendix page 69, which is the second amended complaint. And it's paragraph 28. And I will tell you it's bare bones paragraph. But it says remedy participated in, condoned, ratified, and authorized the actions of Try by first providing to Try any medical information related to Garnett and then by failing to take any significant discipline against Try and or by failing to promptly cause the retraction of the false and defamatory statements. That's the kind of allegation that, at least on a motion to dismiss, assists in defeating any kind of facial challenge to the scope of employment. And that's the kind of thing that we would have amplified and will amplify if we need to if the case goes back. Now, in terms of whether or not the statements are unbelievable on their face, it's important to know two things. The first is that Mr. Try did not say that Sade Garnett went to her grandmother, to go visit her grandmother because she has an STD. And the only reason that a female goes to visit her grandmother is because she has an STD. He said she was having surgery on her vagina. And he said that that's the, and he said it as an affirmative declaratory statement. He said Sade has, Sade is having surgery on her vagina because she has an STD, because the only reason that somebody has surgery on their vagina is because they have an STD. And it's that first part of the statement, the primacy of it right then and there, even coupled with the part that's not perfectly accurate at the end, that tells the listener, and this is the part that's so important on a Rule 12b6 motion, is that the average reasonable listener is going to connect all of those inflammatory parts of that comment and make the conclusion that she's having treatment for a sexually transmitted disease. And I direct the court again, and this is important, to the Milkovich decision. And Justice Rehnquist, in the Milkovich decision, very specifically talked about the fact that they didn't need an exception for opinion statements. But he talked about how people often couch their language in, in my opinion or in my view, or I think. And he said that if a speaker says, in my opinion, John Jones is a liar, he implies knowledge of facts which lead to the conclusion that Jones told an untruth. The court went on to say, even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. And that's the rule of law that we're looking at here. This is a 1990 Supreme Court decision that controls the analysis here. And in that decision, the court specifically said, even if the assessment of facts is wrong, it can still imply a false defamatory opinion or fact-based opinion. And that's what we have here. Again, on a motion to dismiss, construed in favor of Ms. Garnett, construed in favor of an opinion or favor of a fact when there's a question as to whether or not it's a fact versus an opinion. I also reiterate again that, and we put this in our brief, that this was slander. Okay, this isn't libel. This isn't a self-contained written document, which was the case in Biospherics and the case in Potomac Valve and in the case of Agora. This was spoken words. And my father used to always tell me, you know, Richard, don't put the emphasis on the wrong syllable. It's the kind of thing that you need testimony about cadence, about volume, about how you say something. And none of that has happened here. We're looking at a cold second amended complaint and how to interpret that and how to construe it. If we're going to analyze every statement in a trial and arrest, and then this is litigation off to the races and the implications not only for employer liability, but just for basic speech. You can have these defamation actions that exert such a chilling effect over any kind of thing. In statements, every one of them or a great many of them, they're subject to argument, endless argument about what was actually said. They're subject to endless argument over context and inflection. And that's right. But if all of that is going to be, you know, the subject of litigation, it's not only employer liability, but the implications for any kind of candid speech or what have you. You don't know. You say, oh, this is a horrible statement. And it is a horrible statement. But these, you can just, if you have a problem with your supervisor, any time the problem says uncomplimentary, something uncomplimentary, there's litigation. And, you know, I don't understand the limiting principle. I don't understand it. Well, Your Honor, I'll give you two limiting principles. The first is that employees shouldn't say false defamatory things. That's something that should be employees. People shouldn't. Right. But he's more like a coworker here. That's the problem here. You're turning gossip. That's really all it is, is gossip. He's not in any official position. And you're making the employer liable. I just don't understand the leap there. Well, we've explained it, and as we said before, we would like the opportunity to further explain it if need be. But in terms of what we're talking about here, I think the limiting principle is, as Your Honor has emphasized, would be the limits of respondeat superior. But if you take it down a step further. But those are the very things you want. Well, no, those are the very things. You want to knock down your limiting principle. It amuses me to think you say that the limiting principle is that of respondeat superior when you're trying to level it. No, I'm trying to get into the courthouse doors to have testimony about that or to have an opportunity to make allegations about that. And I think that would be appropriate under the circumstances of this case. Again, we ask that the decision be reversed. Thank you. We'll adjourn court, and we'll come down and greet counsel.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Richard Mark Gergel